**UNITED STATES of America,
Plaintiff,**

v.

**Stephen Roger MORIARTY, Defendant.**
**No. 23060–4.**

United States District Court,
W. D. Missouri, W. D.
Oct. 15, 1970.

Anthony White, Asst. U. S. Atty., Kansas City, Mo., for plaintiff.

Austin F. Shute, Kansas City, Mo., for defendant.

## FINDINGS, MEMORANDUM AND ORDER

ELMO B. HUNTER, District Judge.

The defendant, Stephen Roger Moriarty, is charged by indictment returned February 27, 1970, with a violation of the provisions of 50–App. U.S.C. § 462 (a)[1] in his refusal to submit to an Armed Forces physical examination as ordered by Transfer Board No. 167, Kansas City, Missouri. Following a continuance of this proceeding upon the request of his counsel, on April 24, 1970, defendant tendered a plea of not guilty to the charge set forth in the indictment. On September 21, 1970, this cause came before the Court for trial. At that time, after having been fully advised by his counsel and the Court with regard to his constitutionally-protected rights to jury trial, defendant waived jury trial and this case was tried to the court without jury. This matter is presently before the Court upon defendant's motion for judgment of acquittal and plaintiff's countermotion for judgment of conviction.

### Findings of Fact

The facts of this case are undisputed by the parties. The testimony and evidence adduced at trial including the defendant's Selective Service file, reveal the following facts. In September of 1965, defendant entered the University of Notre Dame at South Bend, Indiana, to pursue his college education. At the outset, defendant planned to major in mathematics, and upon his entry into the University, this was initially his field of academic interest. Shortly thereafter, defendant registered with Local Board No. 89 at Kingsport, Tennessee, his local Selective Service board. In view of his status as a college student, defendant was originally classified II–S (student status) by his local board on March 15, 1966. Later the same year, upon defendant's participation in the Reserve Officer's Training Corps at college, he was re-classified I–D.

During the summer of 1967, defendant participated in a slum program in Chicago, Illinois, which was sponsored by his church. Through his activities and experiences that summer, defendant became disenchanted with the R.O.T.C. program, and, upon his return to college the next fall, defendant did not renew his activities in the R.O.T.C. program. In the fall semester of college, defendant declared a new major field of study; namely, that of Theology. Thus, in view

---

1. Section 462(a), Title 50–App., U.S.C., provides, in part:

 "* * * any person * * * who in any manner shall knowingly fail or neglect or refuse to perform any duty required of him under or in the execution of this title, or rules, regulations, or directions made pursuant to this title * * * shall, upon conviction in any district court of the United States * * * be punished by imprisonment for not more than five years or a fine of not more than $10,000, or by both such fine and imprisonment."

of defendant's failure to continue his activities in the R.O.T.C. program, defendant was re-classified II–S by his local board on November 7, 1967.

Approximately one month later, on December 19, 1967, defendant applied for conscientious objection status with his local Selective Service board by submitting Selective Service Form No. 150. In addition to that form, defendant also submitted to the local board various letters and articles supporting his claim to conscientious objector status. The defendant's Selective Service file reveals that, in response to his submission of the conscientious objector form and the other materials, his local board notified him that since he was already classified II–S, a lower classification, it would continue his current classification, but would consider his conscientious objector claim at a later date. On February 15, 1968, defendant notified the local board that he desired to continue his II–S classification until his graduation from college and that he wished to withdraw his conscientious objector claim subject to its renewal upon the completion of his college education.

Defendant's Selective Service file reveals little subsequent activity until the spring of 1969. On May 14, 1969, defendant submitted to the local board a Selective Service questionnaire indicating that he was preparing for the ministry. In response to that questionnaire, the local board requested certain additional information concerning defend-

ant's acceptance by a theological or divinity school. Defendant subsequently requested more time in which to gather certain letters to indicate his participation in a campus ministry program. On July 24, 1969, defendant was invited to appear before the local board to discuss with the board his claim as a conscientious objector or to present certification of ministerial status or ministerial student status. Defendant was later notified that an appearance before the local board had been scheduled for August 12, 1969.

On August 12, 1969, defendant appeared before the local board to present his claims to a I–O (conscientious objection status) or a IV–D (ministerial status) classification.[2] Following the interview by the local board, defendant's claims to a I–O classification or a IV–D classification were rejected, and, on August 22, 1969, defendant was re-classified I–A (available for military service) by the local board.[3]

Shortly thereafter, on September 15, 1969, defendant was ordered by his local board to report for an Armed Forces physical examination at Kingsport, Tennessee on September 24, 1969.[4] A few days later, upon the request of the defendant, a transfer was made to Transfer Board No. 167, Kansas City, Missouri, for the Armed Forces physical examination. On October 6, 1969, defendant was ordered by Transfer Board No. 167 to report for the physical examination on October 13, 1969, at the

2. The entry in defendant's Selective Service file pertaining to his appearance before the board on August 12, 1969, states, in part, the following:

 "Registrant is Catholic—is a graduate of Notre Dame—graduates this June. He has a degree in Theology. He is an ordained deacon in the Catholic Church—he could have gone and taken vows for priesthood under certain conditions. He was preparing for teaching profession up until last year. He may go on into further study or go ahead and become assistant pastor in a church—he can then be ordained as a minister. He was asked what kind of work he does and he stated that he counsels students. He has a contact with the Campus Ministries and

he presently serves as alternate minister—he gives sacraments, etc."

3. On November 3, 1969, upon defendant's appeal from the I–A classification, defendant's Selective Service file was forwarded to the Tennessee Selective Service Appeal Board. That appeal was pending at the time defendant received the order of Transfer Board 167 to submit to an Armed Forces physical examination. On March 24, 1970, by unanimous vote, the Appeal Board continued defendant in the I–A classification.

4. As to defendant's duty to submit to a physical examination prior to induction into military service, see: 32 C.F.R. §§ 1628.10–.16 (1969).

Armed Forces Examining Station, Kansas City, Missouri.

As evidenced by the record in this proceeding, there can be no question that defendant, in violation of 50–App. U.S.C. § 462(a), willfully and knowingly refused to submit to an Armed Services physical examination as ordered by Transfer Board No. 167. Defendant's Selective Service file contains a statement dated October 13, 1969, signed by the defendant which reads, in part, as follows:

"I have received an order in the mail to report for an Armed Forces Physical Examination here this morning.

"I hereby refuse to do so, under any circumstances.

"I feel that cooperation with the Selective Service System at this time is incompatible with the teachings of Jesus of Nazareth.

"I am aware of the fact that this makes me liable to 5 years in prison and/or $10,000 fine."

The testimony of Captain J. Hemingway, Processing Officer at the Armed Services Examining Station, Kansas City, Missouri, substantiates the fact that defendant signed and submitted such statement to the officers at the Armed Services Examining Station with full knowl-

edge of the possible consequences of his refusal to submit to the physical examination.[5] Furthermore, as revealed by his own testimony, defendant makes no attempt to deny that he knowingly and willfully refused to submit to the physical examination on October 13, 1969, as directed by Transfer Board No. 167. Rather, defendant openly admits such action as revealed by his following testimony:

Question: At the time you received your order to report to the local board here in Kansas City for a physical examination were you familiar with the rules and regulations of the Selective Service System in general?

Defendant: Yes, very familiar.

\* \* \* \* \* \*

Question: Mr. Moriarty, it is my understanding you admit that you received the order to report for physical examination?

Defendant: Yes.

Question: You did go down to the Armed Forces Examining Station, you did write the commanding officer a letter indicating that you were go-

---

5. Although it is of no consideration in the present matter, there is some indication in the record that, in addition to his own refusal to submit to an Armed Forces physical examination, defendant encouraged others at the Armed Forces Examining Station to join him in such refusal to submit to a physical examination. The record contains the following document which is attached to defendant's statement of his refusal to submit to the examination:

"MEN OF KANSAS CITY

"Like you, I have received an order to report here this morning for a United States Armed Forces physical examination.

"I HEREBY REFUSE TO SUBMIT TO THAT EXAMINATION We are told by Jesus that we must render to Caesar the things that are Caesar's, and to God the things that are God's.

"I do not believe that Caesar, the Government, has any right whatsoever to

take my body, probe it, stick it, dissect it, and then stamp it I–A, I–Y or 4–F, like some piece of meat in a supermarket.

"Every human body, every human person, is sacred. Our bodies have been given to us by God for the purpose of creating love, hope, and truth in a world that desperately hungers for all these things. Our arms and legs must be used in caring for the poor, not for carrying grenades and rifles, our eyes and ears must be attuned to the cries of the lonely, the helpless, the suffering ones, and not glued to the bombsights of a plane dropping napalm on innocent men, women, and children.

"I invite any of you here to join me in saying 'NO !' to death, hatred, and war.

"I invite you to join me in saying 'YES !' to life, love, and peace.

"May God have mercy on us all
s/ Stephen R. Moriarty"

ing to refuse to cooperate in the carrying out of that physical examination and in fact did not submit to a physical examination, is that true?

Defendant: That is correct.

Question: You knew at the time that you were doing this that you were aware, were you not, of the penalties of the law for an individual who willfully fails to obey an order of his local board?

Defendant: Yes, I was.

Thus, in view of the evidence and testimony adduced by the Government and in light of the admissions of the defendant, it has been shown beyond a reasonable doubt that on October 13, 1969, defendant knowingly and willfully refused to submit to an Armed Forces physical examination as ordered by Transfer Board No. 167, Kansas City, Missouri.

### Conclusions of Law

 There remains for adjudication the contention of the defendant that, as a defense to the charge set forth in the indictment, he may show that his I–A classification was invalid in that there was no basis in fact for the denial by the Local Board of a I–O classification. It is defendant's contention that his Selective Service file amply shows that his classification was improper and that such invalid classification is a valid defense to this prosecution for defendant's refusal to submit to a physical examination. As support for this position, defendant relies upon the recent Supreme Court decision in McKart v. United States, 395 U.S. 185, 89 S.Ct. 1657, 23 L.Ed.2d 194 (1969). In that case, the defendant, a surviving son of a serviceman killed in action, raised the defense that he was improperly classified I–A rather than the IV–A classification (sole surviving son status) to which he was entitled as a matter of law. A close reading of McKart, however, reveals the infirmity of this defendant's present position. In McKart, the Supreme Court held that a registrant's failure to appeal his I–A classification and his failure to report for a pre-induction physical examination did not foreclose his challenging the validity of his classification as a defense to a criminal prosecution for his refusal to submit to *induction* into military service. However, in arriving at that decision, the Court carefully distinguished the registrant's duty to report for a physical examination from the obligation to report for induction:

> "[A] registrant is under a duty to comply with the order to report for a physical examination and may be criminally prosecuted for failure to comply. If the Government deems it important enough to the smooth functioning of the System to have unfit registrants weeded out at the earliest possible moment, it can enforce the duty to report for preinduction examinations by criminal sanctions. In the present case it has not chosen to do so." Id. at p. 201, 89 S.Ct. at p. 1667. "An invalid classification, if allowed to be raised, would have been a complete defense to that prosecution [failure to report to a civilian work camp]; it would *not* be a defense today to a prosecution for failure to report for a pre-induction examination." Id. at p. 203, 89 S.Ct. at p. 1667. (emphasis added).

Thus, as the validity of a registrant's I–A classification has no relevance to his duty to undergo an examination to determine his physical eligibility to serve in the military services, the alleged invalidity of such classification is not available as a defense to a prosecution for failing to report for such examination. United States v. Zmuda, 423 F.2d 757 (3d Cir. 1970).[6] Therefore, such de-

---

6. Although defendant states in his motion for judgment of acquittal that, after the present indictment had been returned, he volunteered to submit to an Armed Forces physical examination, such action cannot absolve defendant of initial violation of 50-App. U.S.C. § 462(a). United States v. Weissman, 434 F.2d 175 (8th Cir. 1970).

fense is not available to the defendant in this case.

Accordingly, for the reasons stated above and in view of the clear and persuasive evidence, including defendant's own admissions, the Court hereby finds the defendant guilty beyond a reasonable doubt of the charges set forth in the indictment.

It is so ordered.